Good morning, Your Honours. May it please the Court, James Marison for Appellate Mediterranean Shipping Company S.A. Your Honour, we're here today regarding a dismissal of a claim as being untimely. More specifically, a maritime indemnity claim was dismissed by the District Court as being untimely filed. MSC's position with respect to the claim is simply put, MSC has an indemnity claim. It specifies that that claim accrues upon payment of the underlying cargo claim settlement. The statute of limitations through the operation of maritime law and the doctrine of latches gives us 12 months to file our suit. So is it your position that the parties could not contract to change the statute of limitations on such a claim? No, Your Honour. My position is that there's nothing in the... Yeah, I understand that. That's in your brief. I understand that. But you're now saying, well, maritime law provides for 12 months. Correct. But the real question in this case is whether or not the intermodal rules modified that general statute of limitations to a different one, right? Correct. And we would say that they do not because they do not provide an exclusive remedy. They don't mandate an exclusive remedy. They do not specify what causes of action can be asserted against BNSF. And more specifically, they contain no provision whatsoever dealing with indemnifications. Well, specifically, there's no provision in the intermodal rules which precludes maritime indemnity claims. Or even more specifically, there's no provision in the intermodal rules which draws MSC's attention to the indemnity rights being foreclosed after a certain time, thereby becoming the insurer of the cargo. So the record in this case doesn't include, at least I can... the ERs. I can't find your notice of claim. In other words, two things happened. You filed a notice of claim within the period specified by the intermodal rules, but the suit wasn't brought within that period. And I know you think that period doesn't apply. Did I overlook the notice of claim? Is it in the record somewhere? No, Your Honor. As you probably read, the intermodal rules have two provisions. A claims notification provision within nine months and a suit notification within nine months after a declaration. Right. And the claims notification is not in the record here? No, it isn't, Your Honor, because we were not notified of a claim until 12 months after delivery. Well, I don't... I mean, it exists. Neither side put it in. I don't... A notification was given to BNSF and that's when they denied it in January of 2023. Do we know whether the notification referenced the intermodal rules? I do not know, Your Honor. So the intermodal rules limitations period refers to claims for recovery of amounts sought in connection with loss or damage. And, you know, setting aside the debate that you have with the other side over how to characterize an indemnity claim and whether it's, you know, equitable or, you know, where it comes from or any of that, why isn't it a claim in connection with loss or damage within the meaning of the contract? Well, the reason, Your Honor, is twofold. One is there's a distinction to be made between a direct claim for cargo damage and a maritime indemnity claim. And this Court has made that distinction clear in the case of states, steamship versus American smelts. Well, but that case involved a claim for salvage costs. And in this case, I take it it's true that had there been no cargo loss, you would have no claim. Had there been no cargo loss, we would never have to settle a cargo claim. Right, right, yeah. In order to then claim an indemnity claim. This claim arises out of cargo loss, where in SS, it arose out of salvage costs, which strikes me as a different... It's slightly different, but the principle is the same, Your Honor, because the SS smelt case was subsequently then applied in Washington in two cases, being the Atlantic Mutual versus OACL case and the American President line and coastal case. It was also cited with approval in the Fifth Circuit decision of Hercules and then applied in that another Fifth Circuit decision of Hyundai Merchant Marine against BNSF, where this precise issue was argued. But there's still, I mean, I'm still not sure I understand the answer to the antecedent question of why does any of that matter when we have a contract that refers to amounts sought in connection or loss or damage? Isn't the question before us interpreting that clause of the contract and assessing whether what you're seeking is in connection with loss or damage? Well, Your Honor, I would say two things and this is the two primary reasons why we believe the District Court was in error. The District Court did not characterize our claim correctly. It immediately jumped into a cargo loss and damage claim when our claim is actually based on an indemnity. And the second... Sorry, go ahead. The problem here is you conceded that the contract can override the statutory statute of limitations, so we're looking at the meaning of the contract term here. And I have the same question as Judge Miller. How are we supposed to interpret the terms in connection with loss or damage? And I think your argument is that that must refer only to direct claims for loss and damage, not indemnification claims arising from a claim for loss or damage. But what in the words in connection with loss or damage limit it to direct claims as opposed to being a fairly broad term that could include anything directly or indirectly arising from loss or damage? It's the plain meaning of the words cargo loss and damage. But we have in connection with. So in our world, in connection with is a very... conveys a broad scope. Well, we would submit that the plain meaning of cargo loss and damage implies a proprietary interest in the cargo that was lost on damage, which MSC never had. MSC was never the owner of the cargo and never suffered any damage whatsoever when the cargo was damaged. Our damage arised when we paid the underlying settlement. The other aspect to my answer would be there is an established line of case law, which I've just gone through, which uniformly holds that ocean carriers indemnity claims in maritime law, like MSC's here, are not subject to the contractual limitations that are in the party's contract, whatever they may be. So now you're backtracking a little from the first answer. You're saying the contract can't? Can't modify the common law or the generally applicable law? Not with respect to our claim for indemnity because there is no provision in the... Yeah, but see, that's a contractual argument. In other words, if it said, including claims for indemnity, you wouldn't be here, would you? No, or if it said indemnity claims are precluded, we wouldn't be here. Okay, so we're trying to figure out whether indemnity claims fall within a phrase that says, regardless of the loss or damage cause, and then it goes on to describe the claims. And I think you have to at least admit loss. This doesn't exclude it on its face, does it? Well, we believe that an expressed exclusion is necessary, Your Honor. So you're saying unless it actually explicitly refers to indemnity claims, it cannot cover them. So do you have a case that literally says the clause in the contract must expressly exclude indemnity claims? It can't be impliedly covered by a broad term. Yeah, it was espoused in the case of Hercules in the Fifth Circuit and applied in the Hyundai Merchant Marine case also in the Fifth Circuit in Burlington, Northern Santa Fe. Were they interpreting the intermodal rules? They were interpreting the exact same provision we're dealing with now. And they said that a claim for indemnity is not a claim for loss of cargo? Yes, Your Honor. They characterized the claim as indemnity. No, I understand they characterized it as indemnity. But was it an indemnity claim that arose out of the loss of cargo? It was, Your Honor. Okay, I'll take a look at those cases. Yeah, I can provide the sites. But it's the exact issue that is at issue here. So we believe the District Court made two fundamental errors. The first is it mischaracterized MSC's claim as a claim for direct cargo loss and damage, when it is in fact a recognized admiralty indemnity claim. Indeed, the District Court didn't address that issue at all in its ruling. The second fundamental error is that the District Court completely ignored the line of cases, starting with the law in this court in Smelt, expanded and applied in the two Washington cases, and sided with approval in the Fifth Circuit decision of Hercules, and then applied directly against BNSF, which says unless there is an express provision in the contract which notifies a party that they could potentially become the insurer of the goods after a period of time, then the court will overlook the contractual provisions and instead rely upon the statute of limitations provided by our time law. And it's for that reason we believe the District Court was in error. And what was, remind me, was the issue in Hercules, I guess I had thought it was, I know I'll go back and reread it, but I thought it was about when the claim accrues, not whether the claim is subject to a limitations period at all. Is that right? The primary Hercules decision involves the official discrediting of the Graceline versus Central Steamship case, being an old Fifth Circuit decision which was rejected because it wasn't consistent with indemnity principles, it wasn't supporting a robust third-party practice, and it encourages selective suits or manipulation of time bars when a court is to look at the contractual provision as opposed to the maritime law statute of limitations. I thought Hercules also involved a claim for hull damage. There were two parts, there was a cargo claim and a hull damage part. But was there a statute of limitations issue? See, I don't see that, I don't see Hercules addressing a conflict between intermodal rules and a contract with respect to cargo damage. Am I wrong about that? I don't believe it addressed the intermodal rules. It was the case that followed Hercules, which is Hyundai Merchant Marine versus Burlington Northern Santa Fe Railway Company, which applies the principles of Hercules directly to the BNSF intermodal rules and holds that the court is to overlook those. Similar to the position that was adopted in Washington in the Atlantic Mutual case. Okay, we've taken you past your time, but we will give you two minutes for rebuttal. Appreciate it, thank you, Your Honor. Mr. Lawrence. Good morning, Your Honors. May it please the Court. Paul Lawrence for BNSF Railway. I think Your Honors have really focused on exactly what the issue is in this case and whether the contract between BNSF and MSC, the intermodal rules, which are admitted by MSC, are part of the contract and that are binding against MSC, exclude the claim at issue here. Who wrote the contract? I'm sorry. Who wrote the contract? The intermodal rules are written by BNSF, and they are approved by regulatory authorities. So if this phrase is susceptible of more than one meaning, should it be interpreted against the drafter? There's no inequity in terms of the bargaining power, and I would also want to point out that the MSC had the option of not taking on the limitations of the intermodal rules. That's also in the intermodal rules that say if you want to essentially buy by paying a higher price less limitations, you can do so and here's how you do so. So I think it is a fully negotiated provision between two highly sophisticated parties. So going to the point, obviously by going through decades and emphasized in the Norfolk Southern Supreme Court case, parties to maritime contracts are allowed to limit their liability in their contracts, and the recognition of that is for the very point I just made is that different limitations on liability relate to the price that's charged by a railroad carrier, for example, so that an entity like MSC can get a lower price by accepting greater limitations on BNSS liabilities. What I hear counsel stating on the other side is that there has to be specific reference to a remedy, specific reference to causes of action, specific provisions how to deal with indemnity claims. There's no authority for any of that in any of the case law. They read you, he read you the decision from the Southern District of Texas, the Hyundai decision, suggested that it requires an indemnity reference specifically. That's not what it said. What the case said is that there's got to be notice. Now they held that there wasn't sufficient notice, but there was absolute sufficient notice. It said, look, if you submit a claim and we deny it, you have nine months to file a lawsuit. That's very specific, that applies to any claim that arises out of cargo loss and damage. And if you look, as the district court did, both at the contract language and the specific claims in the complaint against BNSF, all of the liability that they're claiming is indemnified of BNSF flows from actions that relate to a loss of damage or cargo, and that would be the same types of actions that BNSF would be liable for under the provision. So if the provision is sufficient to cover those claims, which it is, as the district court found, then you have to apply the limitations period. We'll also note that there's never been any explanation why they didn't comply with the limitations period. There's no dispute that the claim was denied by BNSF and that triggered, under the limitations period, a nine-month period for them to file suit. They knew that, this was after they had paid their indemnity claim, and still, they didn't file within the nine months. They waited a year to file their claim. Okay, can I ask you about the specific language of the limitations clause? So there's, I guess there are four sentences. There are three references to loss or damage, and one of them, as a couple of us noted, says in connection with loss or damage. But the second sentence, which is where the nine-month time limits actually appear, says, shipper must file all loss or damage suits against BNSF. That sentence does not use the in connection with language. So don't we have to give some significance to the absence of in connection with in the sentence that actually has the time limit? Well, I think, first of all, as a matter of contract interpretation, you look at all these clauses are in the liability section of the contract, so I think they should be read in connection with each other. I think also the all is sufficiently broad. I mean, again, there's no doubt that the claim, when you look at the complaint, and you look at what's at issue here, the claim are for damages from cargo loss or damage that are being claimed where BNSF did not fulfill its obligations, and those obligations would have been the same under the contract, or in the absence of the contract. So I think that that is an all-inclusive phrase, especially in connection with the in connection language that you have. And is there, why does it say in connection with in one of the three places, but not in the others in that provision? I think that it's not necessary to use that same language. Again, because the clauses are all connected in the same provision of the contract, I think it's fair to try to read them all together. So if you have a claim in connection with this that results in loss or damage claim under cargo, then it would fall within the filing limitations that you're referring to. Okay. And can you address the Hercules case from the Fifth Circuit? Well, I think as Judge Hurwitz pointed, the Hercules case did not involve, it didn't involve, in terms of the decision that's been filed. There was a cargo loss or damage issue in that case. There was, but if you look, so the whole discussion is about the non-cargo loss issue, and it's in that discussion where the issue about indemnity arises. At the very end of the decision, there's a short discussion about the loss of cargo claim. It didn't just say, oh, the indemnity provision that we described above applies. What they said in that last part is, look, we've got to understand what the contract says about loss and damage. And in that case, I think it was a statutory regime says about loss and damage of cargo claim. So we're sending it back to the district court, and they go on to say, but if this is in fact a transportation contract, which we believe it was, if it was a transportation contract, then the statutory limitations on constitutional actions would apply. So I don't see how the Hercules case gets them to where they want to go. What about the Hyundai case? The Hyundai case, I think, is based on a misreading of Hercules as . . . Okay, but what does it . . . I'm sorry. What does it say, though? The Hyundai case is suggested, I think, as he said, that there has to be something in the contract that would give notice to the MSC in this context that they are facing a limitation that could . . . that they need to respond to. And we believe that there is sufficient, both the in-connection of language, the broadness of the liability, and the clarity of the fact that it says if you get a denial . . . I mean, they did submit a claim to BNSF under the contract. It was denied under the contract. And you didn't choose to put that in the record either? No, it's not in the record, Your Honor, and we understand and apologize about that. But, again, they haven't explained in any sense why they are relieving . . . But is your position Hyundai is incorrectly decided or distinguishable? I think Hyundai is distinguishable because it did not look at the specific language in the intermodal agreement and analyze it with respect to the scope of the claim at issue. No, I think it . . . clarification in future courses, I think they would need to clarify it. And perhaps, Your Honors, in emphasizing the scope of contractual rights here would . . . Well, the reason I'm concerned is if it's not distinguishable, you're asking us to create a circuit split on . . . Well, that's not a circuit. It's a district court decision that I believe . . . Well, didn't Hyundai go up to the Court of Appeals? I believe it's all based on Hercules and . . . Well, I understand.  But didn't . . . wasn't Hyundai eventually decided by the Court of Appeals? I'm sorry. I'm not familiar . . . Okay. Maybe I'm wrong about that. So, I don't think you create a circuit split. I think Hercules is distinguishable on its facts and its analysis from the situation here. So, I don't think you would be creating a circuit split at all. I'm happy to answer other questions. Otherwise, we think that the district court properly looked at the contract, properly looked at the claims that were made against BNSF, and properly concluded, consistent with decades of law, including the United States, that you have a right to contract with limitations, apply those limitations, and dismiss the lawsuit. Thank you. Thank you, Counsel. Rebuttal. Thank you, Your Honour. I'd just like to make a few points in rebuttal. Firstly, to pick up your point, Your Honour, yes, the BNSF contract is drafted by BNSF. It is their standard, generic, standard terms that applies to anyone who ships goods on BNSF rail. It's not a bespoke negotiated contract with MSC. The provisions we're talking about today apply to everyone. The second issue is, Counsel, for BNSF raised, why we didn't file within nine months. I want to address that head-on. It's because we believe we had one year, under the statute of limitations, pursuant to the doctrine of latches, to file suit, and we did that in time. More specifically, whether it's a suit notification time bar or a claims notification time bar, they operate in the same way, to foreclose claims. So the rationale as to why they're excluded, and in preference to the statute of limitations provided by maritime law, is the same. So it didn't matter that we didn't file within nine months, even if we had the opportunity to do so, because we had 12 months to do that, and we did. And finally, in addressing the Court's concerns about the Hyundai case, I would also point to the Washington decision in Atlantic. Both of the Washington decisions, both of them are by the same judge, are they not? They are, Your Honour, but the Atlantic decision deals expressly with BNSF's predecessor company, and the 12-month time limit in their intermodal terms that existed at that time. Are you claiming there's issue preclusion? The Third Circuit... You don't argue that. I don't argue that, Your Honour. It's not been argued. But the Third Circuit, in another case involving Hyundai and BNSF, did find issue preclusion based upon the decision of Atlantic Mutual. But I'll read the concluding sentence, which is, The Ninth Circuit has clearly expressed that an action brought for indemnity accrues at the time of the indemnity's payment despite a shorter contractual limitations period applying to claims between the parties. OSCL's cross-claim for indemnification is not barred by the limitation period in Burlington Northern's Rules Miranda C, which was the one-year time limitation provision that applied at that time. So, Your Honour, there's no circuit split. The Ninth Circuit law and the Fifth Circuit law are the same on this point. And we rest on that. Thank you, Counsel. Thank you. Thank both counsel for their helpful arguments and the cases submitted.
judges: HURWITZ, MILLER, SUNG